## W. J. Carrell v. The State.

### No. 5145. Decided February 12, 1919.

1.—Forgery—Indictment—Precedent.

Where, upon trial of forgery, the indictment followed approved precedent, the same was sufficient. Following Carrell v. State, 79 Texas Crim. Rep., 198.

2.—Same—Indictment—County Superintendent—Trust Fund.

The objection to the indictment that the instrument set out therein was illegal and void and could not be made the subject of forgery, because the transfer fund against which said check purported to be drawn was a trust fund, and that the county superintendent was without lawful authority to draw the check against said fund, and the bank had no authority to pay the same, is not well taken.

3.—Same—Indictment—Payee—Trust Fund.

The objection to the indictment that the instrument set out therein was illegal and void for the further reason that the payee named therein was an individual who could not lawfully be made payee of such instrument, and who was without legal authority to cash said check or receive said fund, is not well taken.

4.—Same—Indictment—Non-negotiable Instrument—Indorsement.

The objection to the indictment that the instrument set out therein was non-negotiable, and that the indorsement by defendant of the payee's name on the check was wholly without legal effect and could not create a pecuniary obligation, or affect or transfer property in any manner whatsoever, is not well taken.

5.—Same—Indictment—Indorsement—Forgery.

The objection to the indictment that the indorsement of the alleged check set out therein could not be made the subject of forgery by alteration, or passing a forged instrument, is not well taken. Following Carrell, supra.

6.—Same—Rule Stated—Forged Instrument—Obligation.

It is not necessary that a written instrument made the basis of forgery should import an actual legal efficacy, it is not necessary that the writing should be such as that, if genuine, it would be a binding obligation, but it is sufficient that it is calculated to deceive and is intended to be used to defraud. Following Dreeben v. State, 71 Texas Crim. Rep., 341, 162 S. W. Rep., 501.

7.—Same—Invalid Instrument—Fraudulent Indorsement—Negotiable Instrument.

If the instrument set out in the indictment were conceded to be invalid, still by reason of the alteration of same by the false and fraudulent indorsement of the payee's name thereon would constitute a forgery, although the check was not commercial paper with all the usual features and consequences of negotiability. Following Carrell v. State, supra.

### 8.—Same—Continuance—Leading Counsel.

Where the bill of exceptions showed that the defendant was represented by able counsel, he was not entitled to a continuance based on the absence of his leading counsel. Following Johnson v. State, 41 Texas Crim. Rep., 10, and other cases.

### 9.—Same—Evidence—Other Offenses—Other Transactions.

Where the conversation was shown to directly relate to the alleged forged check and involved defendant's own statement with regard thereto, and such testimony was properly limited in the court's charge, there was no reversible error.

### 10.—Same—Evidence—Deposit Slip.

Where defendant was tried for forgery in that, as county superintendent of public instruction, he forged an indorsement on a certain check and drew the money therefor, there was no error in admitting in evidence certain deposit slips and permitting the president of the bank to show what these deposit slips were.

### 11.—Same—Evidence—National Bank—Amended Articles of Association.

Upon trial of forgery of the indorsement upon a certain check on a national bank, there was no error in admitting evidence of the amended articles of association of said national bank which extended its charter, etc.

### 12.—Same—Words and Phrases—Innuendo.

Where the indictment of forgery set out by innuendo the meaning of certain words, phrases and abbreviations, there was no error in admitting testimony with reference thereto explaining the meaning of the language set out in the indictment.

### 13.—Same—Decisions of Other States—Indictment.

Where, upon trial of forgery, etc., the indictment followed approved precedent, there was no reversible error, and the decisions of the courts of other States are not controlling over the decisions of the courts of this State. Following Carrell v. State, supra.

Appeal from the District Court of Hill.　Tried below before the Hon. Horton B. Porter.

Appeal from a conviction of forgery and passing of forged instruments; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*F. E. Johnson* and *S. C. Padelford,* for appellant.—On question of insufficiency of indictment: King v. State, 27 Texas Crim. App., 567; Carder v. State, 35 Texas Crim. Rep., 105; Lynch v. State, 41 id., 510; Black v. State, 42 id., 585; Williams v. State, 47 id., 605; Bagley v. State, 63 id., 606; Whitmire v. State, 156 S. W. Rep., 1179.

*E. B. Hendricks,* Assistant Attorney General, for the State.

HON. JOHN W. BRADY, Special Judge.—Appellant was charged by indictment with the offense of forgery, was convicted, and his punishment assessed at confinement in the penitentiary for three years.　The indictment contained two counts, charging forgery by alteration of the

instrument hereinafter set out; the second count charging the passing of the alleged forged instrument.

In substance, the indictment charged that appellant, as county superintendent of public instruction for Johnson County, Texas, without lawful authority and with intent to injure and defraud, did wilfully and fraudulently alter a written instrument already in existence, and which he had theretofore made, and which before its alleged alteration was as follows:

"Cleburne, Texas, May 30, 1913.

The National Bank of Cleburne County Depository.

Please pay to T. C. Perry, or bearer, $900.00 Nine Hundred and no/100 Dollars out of the State & Co. collected for school District No. —, Johnson Co. for Trs. expenses.

W. J. Carrell, County
Superintendent Public Schools."

The indictment then charges that appellant altered the said instrument by writing and endorsing the name of T. C. Perry across the back of said instrument, so as to make the same appear as the endorsement of said T. C. Perry, and in such a manner as that said false endorsement so made, would have created, if the same had been true and legally made, a pecuniary obligation of T. C. Perry.

By innuendo and explanatory statements, it was alleged in the indictment that the bank upon which said check was drawn was a national bank, and was the legal depository of the public school funds of Johnson County. Other explanatory matters were alleged, not necessary to here set out, including the averment that part of the language and abbreviations in the instrument meant that T. C. Perry was entitled to $900 out of the school fund of Johnson County, for the year 1913, and that said sum was to be paid to T. C. Perry, payee in said check, out of the fund for transfers, such transfer fund arising from the transfer of school children from the common schools to an independent school district of said county, or to some other district outside of that county. It was further alleged in the indictment that appellant intended by said instrument, and the language and figures therein used that same should be understood and accepted as a check on, and as authority to said depository to pay out of said school funds the said transfer fund of $900. It was also averred in the indictment that appellant intended to sign said instrument in his official capacity of county superintendent of public instruction, by the use of the language "County Superintendent of Public Schools."

The second count of the indictment is the same as the first, except that appellant was charged with fraudulently passing as true the alleged forged instrument to the National Bank of Cleburne.

This case was before this court on a former appeal, being cause No. 4975; and the case was affirmed in an opinion delivered by Presiding Judge Prendergast. It having been thereafter discovered, however, that

appellant had not been sentenced, and that therefore this court had no jurisdiction to entertain his said appeal, the same was dismissed. The case is now here upon a second appeal upon the same record and with substantially the same grounds of error assigned.

Appellant's counsel have attacked the indictment from almost every conceivable standpoint, and have presented their objections in multifarious ways. The same questions in effect were presented by the objections to the validity of the indictment in another case, wherein appellant appealed to this court, viz., Carrell v. State, 79 Texas Crim. Rep., 198. The indictment in that case was in all substantial respects similar to the indictment in the instant case, and the validity of such indictment was upheld by this court, except as to the failure of the State to properly innuendo and explain the phrase "County Superintendent of Public Schools." This vice in the indictment has been cured in the present case, and, therefore, we think the questions presented are to be controlled by the decision in Carrell v. State, 79 Texas Crim. Rep., 198; and we might well rest the decision, as to the validity of the indictment, upon the opinion there rendered by Presiding Judge Prendergast. However, counsel for appellant have presented anew these questions in elaborate written and oral argument, with such earnestness and vigor that we have been impelled to again refer to the authorities and the objections urged against the indictment.

We think that the various contentions and argument of counsel, urged against the validity of the indictment, may be reduced to these propositions: (1) That the instrument set out in the indictment was illegal and void and could not be made the subject of forgery, because the transfer fund against which said check purported to be drawn was a trust fund, and that the county superintendent was without lawful authority to draw the check against said fund, and the bank had no authority to pay the same. (2) That the said instrument was illegal and void for the further reason that the payee named therein was an individual, who could not lawfully be made payee of such an instrument, and who was without legal authority to cash said check or receive said fund. (3) That the instrument was non-negotiable, and that the endorsement by appellant of the payee's name on the back of said check was wholly without legal effect and did not and could not create any pecuniary obligation, or affect or transfer property in any manner whatsoever. (4) That for these reasons the instrument was a nullity, including the endorsement, and could not be made the subject of forgery by alteration, or of passing a forged instrument.

In Carrell v. State, 79 Texas Crim. Rep., supra, Presiding Judge Prendergast set out the substance of the applicable provisions of our Penal Code on the subject of forgery, with the exception of the statute on passing forged instruments; and also tersely stated the substance of the pertinent provisions of the Revised Statutes, relating to the powers and duties of the county superintendent, especially in reference to the transfer funds in the school fund. We deem it unnecessary to again

set out these provisions of law. Neither do we feel called upon to again state the reasons which led to the conclusion there clearly decided, that the county superintendent was authorized if not required by law to effect the transfer of the fund described in the indictment. To this conclusion we adhere. It follows that the bank, the depository of the school fund, was authorized and required to cash, and pay a proper check or order drawn by the county superintendent for the withdrawal of the said transfer fund to the district entitled to same, or to the proper officer or custodian of such fund; but appellant further raises the point that the payee in the instrument, T. C. Perry, was not a legal payee, because he had no title or right to said fund, nor authority to cash said check or receive the money. It may well be doubted whether the county superintendent had any lawful authority to draw said check in favor of the said payee, unless he were the treasurer of the independent district or the proper custodian of the trust fund after its withdrawal and transfer from the county depository, the payor bank. Conceding this proposition to be correct, however, we do not think it follows that the instrument would be null and void or incapable of being made the subject of forgery, under our statutes.

It is a proposition abundantly supported by the authorities in this and other States, as well as by text-writers of eminence, that it is not necessary that a written instrument, made the basis of a forgery indictment, should import an actual legal efficacy. The writing is not required to be such as that if genuine, it would be a binding obligation. It is sufficient that it is calculated to deceive and is intended to be used to defraud. If the instrument purports to be good, although it might be shown by extraneous facts to be invalid, it will suffice as a predicate for forgery, if calculated to deceive or intended for purposes of fraud. A valuable collation of the authorities on this point is to be found in the case of Dreeben v. State, 71 Texas Crim. Rep., 341, 162 S. W. Rep., 501, in the opinion of Judge Prendergast; also see the dissenting opinion of Judge Davidson in Caffey v. State, 36 Texas Crim. Rep., 198. This rule was applied to the Dreeben case by this court, and we refer to the authorities and discussion in the opinion in that case, as expressing our views, and as applicable to the instant case.

In the present instrument, the payee was simply described as T. C. Perry. For aught that appears on the face of the instrument, he might have been the treasurer of the independent district, entitled to the transfer fund described therein, or the proper person to withdraw and hold the custody of said fund. We think it is clear that the instrument set out in the indictment in this case imported at least an apparent legal efficacy and purported to be genuine. It was calculated to deceive, was intended to be and was used to defraud, and purported to affect property, viz., the transfer fund belonging to a school district. Therefore, we adhere to the holding in Carrell v. State, 79 Texas Crim. Rep., 198, that the instrument in question is clearly the subject of forgery.

If the instrument set out in the indictment were conceded to be in-

valid, we still think that by reason of the alteration of same, by the false and fraudulent endorsement of the payee's name thereon, such act and fact of endorsement, under the circumstances, would constitute forgery. We are not inclined to agree with counsel for appellant that the said instrument is non-negotiable. It may be that in a strict commercial sense this instrument would not be regarded as commercial paper, with all the usual features and consequences of negotiability. It may be conceded that such instruments could not be endorsed by the payee and transfer any greater title than that held by the endorser; and also that the doctrine of innocent purchaser would not obtain, as to such an instrument. Yet we entertain no doubt that the instrument was at least quasi-negotiable, and was such that the payee, T. C. Perry, by his endorsement, if genuine, would have created and incurred a pecuniary obligation and liability to his endorsee and transferee.

It was negotiable in form and apparently authorized an endorsement, by the payee, which would transfer the title to the instrument, and to the fund against which it was drawn. Perhaps because of said payee's want of authority to legally become the payee of such an instrument, or to withdraw or receive the trust fund, a person receiving said instrument from him by endorsement or transfer would not have been able to maintain an action either against the bank or the maker of the check, the county superintendent. Be that as it may, we think there can be no doubt that in such a case the endorsee and transferee could have maintained an action against Perry, based on his endorsement and transfer of the check. By his endorsement he in legal effect would have guaranteed the genuineness and validity of the instrument, and would have become pecuniarily liable to his endorsee, or transferee, receiving same for a valuable consideration. Therefore, it would be idle to argue that if the endorsement of said instrument had been in fact made by T. C. Perry, it would not have created a pecuniary obligation on his part, as alleged in his indictment. We again refer to the case of Dreeben v. State, 71 Texas Crim. Rep., 341, 162 S. W. Rep., 501, upon the question of negotiability of the instrument under discussion, and of the legal effect of the frauaulent endorsement thereof by appellant; and also to Carrell v. State, 79 Texas Crim. Rep., 198.

We have examined the authorities cited by appellant, under his several propositions attacking the indictment, and we are unable to perceive that any of them are applicable to this indictment, under our forgery statutes. We will mention only two of them. Appellant strongly relies upon the case of Fox v. Shipman, 19 Mich., 219. The instrument involved in that case was a school district warrant, drawn by the director of a school district on the district treasury, and payable to the assessor, but not to bearer or order. It was endorsed by the assessor to bearer. The holder brought an action of assumpsit, and the sole holding in the case was that the warrant was not negotiable, and that the district treasurer was under no obligation to pay the warrant to any person other than the assessor named therein. The instrument was not

even negotiable in form, and we can not perceive the force or application
of the case to the questions here.

Another case strongly urged in argument by appellant's counsel is that
of School District v. Mallory, 23 Mich., 111. That case involved also
a school district warrant, or order, payable apparently to a firm of in-
dividuals or bearer, and was drawn by the director on the district treas-
urer. It was held that the order was void on its face because the di-
rector had no authority to draw such an order on the treasurer payable
to anyone but the district assessor, who was the disbursing officer of the
district. That debts or claims of this class were authorized by law to
be paid only by the assessor, when properly drawn and countersigned.

It will be observed that the warrant in this case was on its very face
shown to be drawn in favor of a firm of individuals, who, of course, could
not be the district assessor; and, therefore, was in the very teeth of the
school law of Michigan, which provided that such warrants or orders
could only be drawn in favor of the assessor. It is also to be remem-
bered that this case apparently holds that claims or debts of the class
described on the face of said warrant, or order, could only be paid by
the assessor, who was the lawful disbursing officer of the district.

We think outside of the fact that neither of the two cases just referred
to were forgery cases, but were civil actions, the above considerations
served to distinguish them from the present case. Besides, it is not
pointed out that the statutes of Michigan are the same as those in Texas
on the subject of forgery, and it is unsafe to attempt to apply prin-
ciples or doctrines announced in other jurisdictions, where the statute
law applicable is not clearly the same in substance.

For the reasons above given, and in the former cases cited, we are
compelled to overrule all of the assignments and bills of exception al-
leging the invalidity of the indictment, and we hold the indictment good.

Appellant's bill of exception No. 1 complains of the trial court's
action in overruling appellant's motion for continuance, based on the
absence of appellant's leading counsel, Hon. D. W. Odell. We have
examined this bill and are of the opinion that no adequate reason was
assigned in the motion or by the facts recited in the bill for the absence
of leading counsel. Furthermore, the bill shows that appellant was rep-
resented by two able attorneys and the record bears intrinsic evidence
of the zeal and ability with which appellant was represented in the trial
of the cause by the associate counsel. Under the uniform rule
of this court, this bill shows no injury to appellant, and fails to present
any reversible error. On this point it will be sufficient to cite the fol-
lowing cases: Johnson v. State, 41 Texas Crim. Rep., 10; Monroe v.
State, 56 Texas Crim. Rep., 244. Therefore, we hold that the court
properly overruled appellant's motion for continuance, and the said
bill of exception is without merit.

By bill of exception No. 2 appellant complains of the action of the
trial court in permitting the State to introduce evidence of alleged ex-
traneous crimes. This bill, in connection with the statement of facts,

shows that S. B. Norwood, the president of the bank on which the alleged forged check was drawn, testified to a conversation with appellant in the law office of Ramsey & Odell in Cleburne, in the presence of Mr. W. M. Odell, who was attorney for the bank. The substance of the testimony was that Mr. Norwood said in the presence of Mr. Odell that appellant had gotten in trouble over some fictitious, or forged vouchers or checks, and had thereby obtained certain funds from the State. That Mr. Odell remarked to appellant that he was very sorry to hear it, that appellant replied, "Yes, that he didn't understand why he had made such a fool of himself, or had acted such a fool," something substantially to that effect. That Mr. Norwood handed appellant all of the vouchers that had been drawn against the school fund for the past two years and asked him to pick out those that were good and put them in one pile, and those that were bad and put them in another, which he proceeded to do. That witness noticed the $900 voucher, the check set out in the indictment, and that appellant put same in the pile called the "straw pile." That witness asked appellant about this voucher and asked him if he didn't use his father-in-law's name, and he said that he did, and witness further asked him if he didn't endorse it with his left hand, and he said that he did. Witness asked appellant, after he separated the good ones from the bad ones, if he knew how much it amounted to, and he said that he did not, that he had lost track of it. That the vouchers claimed as bad, or "straw" vouchers, were tabulated, and that witness handed said tabulation to appellant, and they amounted to $——. That when appellant saw the amount of the tabulation his exact expression was, "My God!" That witness asked appellant how he could write the signatures the same and he stated that when he would use one name he would keep a copy of it in the office and the next time he used a check like that he would refer to it and write it like he wrote it before.

By bill of exceptions No. 8, appellant presents similar objections to the testimony of W. M. Odell, whose testimony was along the same line as that of the witness Norwood. The substance of the objections are that by this testimony the State was attempting, and was permitted to show other separate and distinct transactions than the one for which appellant was being tried, and that said testimony was not admissible for any purpose, and was highly prejudicial to appellant.

We think this testimony was admissible, as the conversation was shown to directly relate to the check in controversy and involved appellant's own statement with regard to the check for $900, set out in the indictment, which appellant's own admissions showed he had classed in the "straw pile," or list of bad checks. Both the bill and the statement of facts show that the court amply safeguarded appellant's rights in relation to this testimony, by instructing the jury not to consider the other alleged transactions, otherwise than as explanatory of the matter inquired about, that is, the particular check for $900. It is further shown

by the transcript that the court specially charged the jury as follows: "You are further instructed that you are not to consider for any purpose that part of general conversation, or conversation, or conversations, by the defendant, W. J. Carrell, and S. H. Norwood or W. M. Odell, relative to any transaction or transactions other than that which bears directly, or throws light upon, if it does, the check or voucher offered in evidence herein, being exhibit No. 2."

We believe the jury could not have been misled by the charge, or by the verbal instructions given at the time this testimony was offered and admitted, and that the rights of appellant were fully safeguarded and protected by the court's instructions, limiting the scope and effect of this testimony to the issue before the jury. Being of the opinion that these two bills of exceptions are without merit, we overrule the assignments.

By bill of exception No. 3 appellant complains of the action of the trial court in admitting in evidence deposit slips Nos. 3, 4 and 5, and in permitting the witness Norwood to state what these deposit slips were. This testimony was objected to because the deposit slips were not the best evidence, and because the statement of witness in regard thereto would be an opinion and the conclusion of the witness, and that said testimony was wholly inadmissible and immaterial. From the bill and statement of facts, it appears that these deposit slips were in fact the original entries of deposit made by appellant in the bank and were the best evidence of the deposits. The testimony related to one of the material allegations in the indictment, the receipt by the bank from the State of the Johnson County available school fund, out of which the transfer fund alleged in the indictment arose. The testimony was admissible on this issue, and the bill of exceptions and statement of facts show that the testimony of the witness Norwood in relation thereto was not a conclusion. The bill wholly fails to show any reversible error and the assignment is, therefore, overruled.

By bill of exception No. 4, appellant assigns as error the admission by the trial court of the amended articles of association of the National Bank of Cleburne, and the extension of the charter of said bank issued by the Comptroller of the Currency, because these instruments fail to show any authority or charter of said banking institution, as a national bank, and that said testimony was secondary and not the best evidence. We have carefully examined this bill in connection with the statement of facts and find that the State satisfactorily accounted for its failure to introduce the original articles of incorporation of the bank. The certified copy of the amended articles and the extension of charter having for their purpose, and reciting on their face, the extension of the corporate life of the institution as a national bank, had a direct bearing upon a material issue in the case, and a necessary allegation in the indictment; and we think were admissible, if not sufficient proof of the incorporation of the bank. Furthermore, the fact of incorporation was shown by oral testimony, upon the predicate that the original charter

had been lost or mislaid. It is unnecessary to cite authorities that a fact of this sort may be shown by oral testimony. Indeed, many authorities hold that such a fact may be established by reputation, where better evidence is not available. This bill shows no reversible error and the assignment is overruled.

In bills of exception Nos. 5, 6 and 7 appellant presents the alleged errors of the trial court in permitting S. B. Norwood to testify as to the meaning of certain words and phrases and abbreviations contained in the instrument set out in the indictment. This testimony all related to matters which were made the subject of innuendo and explanatory statement in the averments of the indictment and was upon material, if not necessary, issues. The witness spoke from a long and familiar course of dealing with the public school fund, as president of the bank which was the depository of such funds and from a long and intimate course of dealing with appellant, in his official capacity as superintendent of public instruction. We are of the opinion that it was proper, if not necessary, to prove these facts, and it was permissible for the witness to explain the meaning of the language, as set out in the indictment.

There are other errors assigned but we deem it unnecessary to discuss them. They have all been examined and we are of the opinion that none of them present reversible error, and they are therefore all overruled.

Since we are of the opinion that it has not been shown that reversible error was committed on the trial, the judgment will be affirmed.

*Affirmed.*

MORROW, JUDGE, not sitting because disqualified.

### ON REHEARING.

#### February 12, 1919.

HON. F. B. ROBERTSON, SPECIAL JUDGE.—In both oral and written arguments counsel for appellant has attacked the original opinion in this case, mainly upon the ground that the instrument declared upon and set out in the indictment is not such an instrument as can be made the basis of a charge of forgery under our statute, and that said instrument is void upon its face, is not negotiable under the law merchant, and is not a pecuniary obligation within the meaning of our statute on forgery. All of these questions were fully discussed in the opinion of the court in the case of Carrell v. State, 79 Texas Crim. Rep., 198, 184 S. W. Rep., 217, which was another case against appellant on a charge of forgery of an instrument which was substantially to the same effect as the one involved in the present case. In the case just referred to this court held the indictment defective on the ground that it did not contain certain innuendo averments necessary to its validity, but held that the indictment was otherwise sufficient.

In the present case the indictment contains the innuendo averments necessary to meet the objections pointed out in the opinion in the

former case.   Both in the former case and in this one, appellant was charged, not with having forged the instrument itself, but with having forged the endorsement on the back thereof.   The indictment in both cases based the charge of forgery upon the unlawful and fraudulent making of the endorsement on the back of the instrument.

In Carrell v. State, supra, it was held, in effect, that the instrument set out in the indictment in that case was not void so as to prevent it from being the subject of forgery, and that the endorsement on the back thereof, if genuine, would have affected the indorsee pecuniarily, and have created a legal pecuniary obligation on his part.   On the authority of that case, the soundness of which we do not question, the contentions of the appellant must be overruled.

In neither the oral argument before the court on rehearing, nor in the written argument filed herein, does the appellant mention or discuss the case of Carrell v. State, supra, but appears to have wholly ignored the decision in that case, although directly in point, and for us to now sustain the contentions of appellant would require the overruling of that case, which we are unwilling to do, believing that the legal principles involved were correctly decided.

In the original opinion in this case, the authorities cited by appellant were reviewed, discussed and distinguished, and besides, those authorities were decisions of the courts of other States, and are not controlling over the decisions of the courts of this State.

We do not doubt that the instrument declared upon, and set out in the indictment is a pecuniary obligation—one having money for its object—within the meaning of our statute on forgery.   Neither do we doubt that the false and fraudulent making of the endorsement on the back thereof would, if genuine, have created a pecuniary obligation, and may properly be made the basis of forgery under our statute.

These questions were fully discussed in the case of Carrell v. State, supra, and in the original opinion in this case, and were, we believe, correctly decided, which necessitates the overruling of appellant's motion for rehearing, which is accordingly so done.

*Overruled.*